IRISH AMERICAN LOAN ASSOCIATION, Plaintiff, *v.* GISSELLE STAN-
FIELD et al., Defendants.

Supreme Court, Erie County, December 16, 1943.

*Kevin Kennedy* and *James E. Foody* for plaintiff.

*Samuel D. Magavern* for Gisselle Stanfield, defendant.

*Charles Diebold, Jr.*, for Robert I. Millonzi, defendant.

CLINTON T. HORTON, Official Referee. This action is brought for a declaratory judgment under section 473 of the Civil Practice Act, declaring the rights and other legal relations of the parties hereto in respect to the matters set forth in the complaint.

The plaintiff is the owner of premises at No. 96 Cleveland Avenue in the city of Buffalo, N. Y., and as such on April 30, 1942, rented the premises to defendant Stanfield by a written lease for one year from May 15, 1942, for $1,140 payable $95 on the 15th day of each month in advance. The lease provides, *inter alia,* that the owner might terminate the lease in case of sale by giving the tenant sixty days' notice by registered mail, and that the tenant might likewise terminate said lease by giving like notice of thirty days in case he moved from the city of Buffalo. It also provided that the tenant should have the option to purchase the premises upon the same terms and for the same consideration as contained in any bona fide offer accepted by the owner, said option to be exercised by entering into a sales contract with the owner within five days after being notified by the owner of its acceptance of said bona fide offer.

Upon the execution of the lease the tenant paid one-half month's rent to the plaintiff and thereafter paid the full month's rent on or about the first day of each month and is still in possession of the premises with rent fully paid.

About May 3, 1943, the tenant paid to plaintiff one month's rent which paid for one-half month upon an extended term of the lease.

About August 6, 1943, the plaintiff received an offer of $8,500 for the premises from the defendant Millonzi, which it accepted subject to the rights of the tenant, but did not notify the tenant of the proposed sale. The tenant, hearing about the sale from a broker and from defendant Millonzi, wrote the plaintiff on August 26, 1943, stating that she wished to exercise her option to purchase the premises at the price offered and asking for the terms of the proposed sale. She has tendered a check for $2,500, which tender she has kept good, and she now insists that she is entitled to purchase the premises.

The plaintiff and the defendant Millonzi, however, take the position that since May 15, 1943, the tenant can make no claims under the lease because the lease by its terms expired on May 15, 1943, and the tenant, by virtue of section 1388.1806 of the rent regulations for housing (Maximum Rent Regulation 28, eff. July 1, 1942, 7 Fed. Reg. 4913) issued by the National Government on account of the emergency in defense-rental areas (in which the city of Buffalo is included [7 Fed. Reg. 3195]), became after May 15, 1943, a statutory tenant, so-called, with no rights based upon her lease. They cite as authority for this proposition the case of *Stern* v. *Equitable Trust Co.* (238 N. Y. 267), which passed upon the effect of the Emergency Rent Laws of New York State (L. 1920, ch. 944, and acts amendatory thereof and supplemental thereto) on the liability of a tenant who holds over after the expiration of the term of his written lease.

Subdivision (a) of section 1388.1806 of the rent regulations provides that a landlord shall not remove or attempt to remove a tenant who continues to pay the rent to which the landlord is entitled " notwithstanding that such tenant has no lease or that his lease or other rental agreement has expired ", unless a tenant with a written lease " has refused upon demand of the landlord to execute a written extension or renewal thereof."

Subdivision (c) of section 1388.1801 of the regulations is as follows: "The provisions of any lease or other rental agreement shall remain in force pursuant to the terms thereof, except insofar as those provisions are inconsistent with this Maximum Rent Regulation." (7 Fed. Reg. 4913.)

The question to be determined in this action is whether these regulations are to have the same effect upon the rights of tenants as the Emergency Rent Laws of the the State of New York as decided in *Stern* v. *Equitable Trust Co.* (*supra*). It is to be noted that in the case above cited and in other cases of

similar import, the landlord and the tenant did not agree to any renewal of the lease and that in the controversy which followed, the tenant sought the protection of the statute enacted for his benefit, and the Court of Appeals said in that connection (p. 269): "The tenant * * * remains in possession, not by virtue of any agreement, express or implied, either as to duration of term or amount of rent but by virtue of the compulsion which the law exerts on the landlord to allow him to remain ", and said also (p. 269): " If the elements of offer and acceptance, express or implied, are absent, the relation of landlord and tenant does not exist." In the case at bar, unless these regulations operate to prevent it, the lease was renewed on May 3, 1943, by operation of law when the tenant paid rental for the beginning of another year and for three months thereafter continued such payments with the landlord accepting the same without any reservations whatsoever. This clearly differentiates this case from that above referred to, and said case is not controlling under the facts developed. The effect of this, unless changed by the regulations, was to create a new tenancy subject to the original conditions.

*Kennedy* v. *City of New York* (196 N. Y. 19, 23) reads: " Some of the text writers and a few of the earlier decisions seem to have confused the subject by referring to tenancies from year to year, arising by operation of law, as continuations of the original terms, when it would have been more correct to characterize them as new tenancies subject to the original conditions. The later decisions in this court have, however, defined this species of tenancy with a precision that admits of no misunderstanding. In the case of *United M. Realty & Impr. Co.* v. *Roth* (193 N. Y. 570, 576) it was held, upon the opinion of Chief Judge CULLEN, that 'the right of the landlord to treat the holdover as a tenant for a *new* term does not spring from the contract of the parties but is the penalty imposed by law upon the trespassing tenant.' The same view was expressed in Judge VANN's dissenting opinion in the following language: ' Owing to the previous relations between the parties the law implies a renewal of the obligations dependent on those relations, which measure every detail of the *new* contract.' (P. 579.) "

The court continues at page 25: " Upon principle and authority we conclude that a tenancy from year to year, created by the tenant's holding over after the expiration of his original term, is a new term for each year of such holding over, upon

the terms of the original lease so far as they are applicable to the new relation.''

Do the rent regulations change this? I think not. Subdivision (c) of section 1388.1801 above-quoted expressly provides that the provisions of any lease shall remain in force unless inconsistent with the regulations. Under the authorities cited above, I construe this regulation as meaning the provisions of any lease and any legal consequences or implications arising therefrom.

The defendant Stanfield was in possession under a new tenancy subject to the original conditions. This was not because of any compulsion exerted on either party but because of the agreement which the law implies from their conduct, payment by the one and acceptance by the other of the rentals due upon the renewed tenancy. There is nothing in this inconsistent with the provisions of the rent regulations, which must be strictly construed when invoked to whittle away the rights of the party they were enacted to protect and when they are sought to be applied in a manner that infringes upon freedom of contract and in derogation of the established law of the States. I cannot believe that the effect or intent of the rent regulations was to substitute a statutory tenancy for one agreed upon by the parties themselves when the amount of rent was not involved in any way.

It seems to me that the position of the tenant is in all respects the same as if the controversy arose during the term of the original lease, as to which counsel for defendant Millonzi conceded upon the argument the tenant would have had the absolute right to exercise the option provided for in the lease. I am therefore of the opinion that judgment to that effect should be rendered herein.

In deciding as above, I have taken into consideration the evidence offered by the plaintiff in an attempt to prove that the lease was not renewed as such, and the evidence that on numerous occasions during the tenant's occupancy of the premises she declined to exercise her option to purchase; but I can see nothing in them to change the above conclusions, as I deem the evidence in behalf of the tenant as to the former the more satisfactory; and her apparent lack of interest in purchasing cannot be considered as a surrender of her rights under the option which was in effect during the whole term of her new lease, particularly when she was never offered the property upon as favorable terms as those offered defendant Millonzi, which is what the option required.

Judgment may be entered to conform to the above.