Feauoís X. Conlox, J.
Plaintiffs, tenants of a building at 25 Sutton Place, move to enjoin defendants, Stavros Marches, Douglas L. Elliman & Go., Inc., and 25 Sutton Place Corporation, from commencing proceedings to evict them pending the determination of this action. A motion by defendants for summary judgment, dismissing the complaint, is also before the court for decision.
On September 16, 1957, the State Rent and Eviction Regulations were amended (Arndt. No. 69) so as to decontrol certain so-called luxury apartments from and after March 16, 1958. The apartments occupied by plaintiffs fall within the scope of the amendment. The validity of said amendment has been upheld by the Special Term and by the Appellate Division. The effect of the amendment was to decontrol, after March 16, 1958, all the apartments in the building at 25 Sutton Place, except two which are occupied under unexpired leases. All other tenants, including the plaintiffs in this action, were in occupancy without leases, as statutory tenants. On February 28, 1958, shortly before decontrol was to become effective, defendants presented to plaintiffs and other tenants a plan pursuant to which the building would be made co-operative and the tenants would be given an opportunity to purchase stock in the co-operative corporation. On March 7, 1958, defendants wrote letters to the tenants whose apartments were about to be decontrolled, in which the tenants’ attention was called to the imminency of decontrol. Each letter stated that ‘ ‘ the decontrolled rental that might be obtained for your apartment is materially in excess of the present rent ” and that “ pending the cooperative plan becoming effective ” the landlord was increasing the monthly rent only 20% “in order to cover the present costs of *327 operating the building”. Thereafter, the present action was commenced, for the purpose of obtaining a declaratory judgment that the co-operative plan was illegal and void, for various reasons. On April 29, 1958, after the commencement of the action, defendants wrote letters to the decontrolled tenants, in which the latter were informed that their apartments had become decontrolled as of March 16, 1958, and stating that, as of June 1, 1958, their rents would be increased to amounts specified in the letters, which were greatly in excess of the previously increased rentals. On May 5, 1958, prior to the service of their answer, defendants withdrew the co-operative plan, pursuant to a provision thereof which reads: “ The Owner reserves the right to withdraw the plan prior to the plan having been declared effective ”. Concededly, no apartments had been purchased by the tenants and the plan had never been declared effective.
In view of the fact that the defendants, as they had the right to do, have withdrawn the co-operative plan, this action, which is essentially an attack upon the plan, has clearly become moot. Plaintiffs call attention to a provision of the State Bent and Eviction Begulations (§ 55, subd. 3[i]) which reads “ Where a cooperative plan * * * presented to the tenants of controlled housing accommodations is not declared effective * * * a period of eighteen months from the date of the presentation of the first plan must elapse before another cooperative plan may be presented to the tenants of the structure ”. Belying upon this provision, plaintiffs urge that they are entitled “ to the continuing protection of the rent control law until September 1, 1959, the date on which defendants could next propose a cooperative apartment house plan ”. This contention is a complete non sequitur. The 18 months’ provision obviously relates only to situations where the tenants continue to enjoy the protection of the rent laws, and merely gives tenants who remain controlled statutory tenants the right to a period of 18 months after one plan is presented before they are confronted with the necessity of deciding whether to purchase under a new plan. The regulation in question was not intended to, and does not, extend the statutory tenancy of tenants beyond the date as of which their apartments are decontrolled. The defendants were under no obligation to present any plan to the tenants prior to the date of decontrol. The fact that they did so did not in any way change or affect the date of decontrol fixed in amendment No. 69 to the State Bent and Eviction Begulations,
*328 Plaintiffs also maintain that because they paid the 20% rent increase for the month of April, 1958, demanded in defendants ’ letter of March 7, 1958, they became, by operation of law, tenants for a period of one year and, therefore, not subject to eviction until the expiration of that year. This contention is unsound. The letter of March 7, 1958, expressly stated that the increase of 20% was to be only “ pending the cooperative plan becoming effective ”. The 20% increase was not to remain in effect after the plan had been withdrawn and could no longer be declared effective. On the expiration of plaintiffs’ statutory tenancy, defendants were free to make an agreement with plaintiffs for a monthly tenancy, or a month to month tenancy, or a tenancy only for the period during which the co-operative plan was under consideration by the tenants (see Curtin v. Porter, 133 Misc. 707; Appellate Term, 1st Dept.). There could be no implied renewal inconsistent with the terms of the agreement pursuant to which plaintiffs paid rent and continued in possession.
Plaintiffs’ reliance upon the provisions of section 232 of the Beal Property Law is also misplaced. That section applies only where the duration of the occupancy is not specified. In the instant case, the duration was specified, viz.: the period during which the plan was under consideration for acceptance or rejection by the tenants.
It follows from the foregoing that defendants’ motion to dismiss the complaint must be granted and plaintiffs’ motion for injunctive relief denied.
The court has made no attempt to consider whether or not the increases in rent demanded by defendants are fair and reasonable, for the effect of decontrol was to entitle defendants to charge whatever rentals they wished for the apartments in the building — even rentals largely in excess of the fair and reasonable rental values of the apartments. The ethics of defendants’ conduct is no legitimate concern of the court, as long as what they did was within their legal rights. Once their apartments were decontrolled, plaintiffs ceased to enjoy any protection against the amount of rent which their landlord could ask of them. Their only remedy, if they do not wish to comply with the landlord’s demands, is to move out.
A word is in order as to a claim made in plaintiffs ’ brief that the complaint states a cause of action on the theory that defendants conspired “to unjustly enrich themselves”. Plaintiffs cite cases for the proposition that even a lawful act is actionable if done for malicious reasons. The complaint, however, contains no allegation that defendants’ acts were the result of *329 malice or ill will toward plaintiffs, or due to anything but the legitimate desire to obtain as much money as they could for their property. Furthermore, the complaint contains no allegation that plaintiffs were damaged by the acts complained of and, in addition, contains no prayer for damages.
The motion for injunctive relief is denied, and the motion to dismiss the complaint granted.