CITY OF NEW YORK, Landlord, Respondent, *v.* INTERBORO FUEL CORP., Tenant, Appellant.

Supreme Court, Appellate Term, First Department, July 9, 1945.

*Leon Caminez* and *Joseph Hamerman* for appellant.

*Ignatius M. Wilkinson, Corporation Counsel (Benjamin Offner, Julius Isaacs* and *William A. Marks* of counsel), for respondent.

SHIENTAG, J. This is an appeal by the tenant from a final order and judgment of the Municipal Court in favor of the

landlord. Summary proceedings were instituted for nonpayment of $1,000 a month rent for January and February, 1945, under a written lease of the demised premises. For a first defense the tenant pleaded that the rent demanded was unjust, unreasonable and oppressive, being in excess of the emergency rent which may be demanded under the Commercial Rent Law (L. 1945, ch. 3, as amd. by L. 1945, ch. 315). For a second defense the tenant alleged that the rental value of the premises, being commercial space, has been reduced because of unreasonable diminution of services.

The second defense may be disposed of briefly. The tenant claims that the plant was run down and that there should be deducted, from the amount of the emergency rent, moneys spent by the tenant on the premises. It appears that as a result of the tenant's complaint in that regard it was allowed $500 on the November, 1944, rent and the landlord agreed to make a further allowance of $1,000 at the end of the tenant's occupancy. These allowances were voluntarily granted by the city after the tenant had complained that some of the equipment was not functioning properly. The allowances were made despite the fact that under the agreement the tenant was required to make all repairs at its own expense. The court below was warranted in refusing to allow a reduction in rent based on any alleged diminution of services.

The first defense is not applicable to the January, 1945, rent which accrued before the enactment of the Commercial Rent Law. The question before the court, therefore, relates solely to the emergency rent payable for February, 1945. The city makes the point that the property in controversy is " pier, dock and wharf property " and that such property is specifically exempted from the operation of the Commercial Rent Law by virtue of the amendment of that law by chapter 315 of the Laws of 1945. That amendment, by its terms, is to be construed as effective since January 24, 1945. This contention was not available to the city at the time the case was tried in the court below, the amendment referred to not having then been enacted. The question as to whether this property is " pier, dock and wharf property " was not litigated below and should not be determined by this court without giving the tenant an opportunity to contest the issue. The city has indicated its acquiescence in such a course, without prejudice to its right to raise the question in any subsequent dispossess proceeding or action to recover rent.

We proceed then to the main issue in this case, namely, the amount of rent payable under the Commercial Rent Law. The emergency rent is defined as the rent reserved or payable under a lease or rental agreement in force on March 1, 1943, plus 15% of such rent. What was the rental agreement in force in March, 1943? Neither the city nor the tenant involved in this proceeding had any estate or interest in the property in March, 1943. It was owned at that time by the Meenan Coal Company which had leased the premises to Dependable Fuel Corporation under a written lease for a term commencing November 1, 1941, and ending May 31, 1942. Thereafter the lease was renewed for an additional term of one year commencing June 1, 1942, and ending May 31, 1943. Meenan's lease to Dependable fixed a rental of ten cents per ton for each ton of coal weighed on the scales on the premises, payable monthly on the 15th day of the following month.

There was a sublease from Dependable Fuel Corporation, as tenant, to Rubel Corp., as subtenant, for a term commencing November 1, 1941, and ending May 31, 1942, at a rent of $500 per month. This sublease was extended to April 30, 1943, and provided for the payment of a like rent. The city acquired the property in condemnation on January 7, 1944. By written application dated September 14, 1944, and approved by the Director of Real Estate of the Board of Estimate, the present tenant was granted permission to occupy the city-owned property. The tenancy, terminable by either party on thirty days' notice, was to commence September 21, 1944, at a rental of $1,000 per month payable in advance on the first day of each month, the tenant to make all necessary repairs at its own expense. The agreement, as stated, was subsequently modified by reducing the rent for November, 1944, to $500 and allowing the tenant to occupy the property, rent free, during the last month of its tenancy.

The tenant contends that the basic emergency rent is that reserved under the sublease to Rubel, namely, the sum of $500 a month plus 15% or a total of $575 monthly. With that contention we are not in accord. The tenant here would have the court determine the rent to which the city, as owner, is entitled, not on the basis of what the owner was paid in 1943, but on the basis of what a subtenant then paid to the original tenant. The emergency rent applicable must depend upon the parties to the proceeding. If the issue is between the owner and the lessee, the rent payable under the master lease in March, 1943, will control; if the issue is between the sublessor and the

sublessee, the rent that controls is that payable in March, 1943, under the sublease. If, as here, the parties had no estate or interest in the property in 1943, the agreement between their predecessors in interest controls.

The tenant further argues that if the master lease be held to control, the emergency rent should be computed, not on the basis of the amount of rent actually paid to the owner, but in accordance with the method provided in the lease for computing the rent. In other words, it is contended that since Dependable paid Meenan ten cents for each ton of coal weighed on the premises, the emergency rent applicable to the present rent is ten cents per ton, plus 15%, or eleven and one-half cents per ton. This, however, would be tantamount to imposing on the city a contract which the parties never made and which the statute does not authorize.

The Commercial Rent Law, as amended, provided in section 14, in part as follows: " Any lease wherein the specified rent or any part thereof is variable according to volume or other criteria of volume of the tenant's business shall continue without change, but where such lease provides for the payment of a fixed, basic or minimum rent, such fixed amount shall be subject to the provisions of this act." The tenant argues that these provisions, which govern variable rentals, apply to the 1943 lease and that, therefore, the provisions of that lease are to continue without change. The words " Any lease wherein the specified rent or any part thereof is variable " are in the present tense and must necessarily refer to a lease in existence at the time the law took effect, January 24, 1945. This language cannot mean that a " variable rent " lease in force in March, 1943, which has since expired, shall be deemed to continue without change when there is an existing lease providing for a fixed rental.

Finally, there remains for consideration the question as to how there should be computed the rent payable under the agreement which was in force on March 1, 1943. Inasmuch as the tonnage varied from month to month it would be manifestly unfair to determine the rent on the basis of the number of tons weighed on the property during any one particular month. Because of such variation it is necessary to ascertain the total rent paid under the lease in force on March 1, 1943. That total divided by twelve will give the monthly rent under the agreement. Under the lease then in force Dependable paid Meenan $9,760.50 on the basis of 97,605 tons weighed from June 1, 1942, to May 31, 1943; 15% of that figure is $1,464.

The total emergency rent as defined in the statute is therefore $11,224; on a monthly basis this amounts to $935.33.

The final order and judgment should, therefore, be modified by fixing the emergency rent at the sum of $935.33 a month and the amount of rent due for the months of January and February, 1945, at the sum of $1,935.33, and as modified, affirmed without costs and without prejudice to the right of the city in any subsequent proceeding or action to raise the question as to whether or not the demised premises are " pier dock and wharf property " within the meaning of the Commercial Rent Law as amended (L. 1945, ch. 315).

HAMMER and EDER, JJ., concur.

Order and judgment accordingly.